UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BERNADETTE ANN ROLL,

                                        Plaintiff,

         -vs-                                                    13-CV-007C

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,[1]

                                        Defendant.

_____

APPEARANCES:              CHARLES E. BINDER, ESQ.
                          Binder and Binder, P.C.
                          New York, New York
                          Attorneys for Plaintiff

                          WILLIAM J. HOCHUL, JR.
                          United States Attorney, Western District of New York
                          (MARY E. FLEMING, AUSA, of Counsel)
                          Buffalo, New York
                          Attorneys for Defendant


         This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny (Item 15).

         Plaintiff Bernadette Ann Roll initiated this action pursuant to Section 405(g) of the

Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the

Commissioner of Social Security (the "Commissioner") denying plaintiff's application for

Supplemental Security Income ("SSI") and disability insurance  benefits ("DIB").  The

plaintiff has filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the

_____

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.
Pursuant to Fed. R. Civ. P. 25(d), she is substituted for former Commissioner Astrue as defendant in this
case and no further action need be taken.  *See* 42 U.S.C. § 405(g).

Federal Rules of Civil Procedure (Item 6) and the Commissioner has filed a cross motion requesting the same relief (Item 11).   For the following reasons, the Commissioner's motion is granted and plaintiff's motion is denied.

## BACKGROUND

Plaintiff was born on June 22, 1965 (Tr. 100).[2]   She applied for SSI and DIB on April 21, 2009, alleging disability as of February 28, 2009 due to back injury, leg injury, bronchitis, and emphysema (Tr. 105).  Plaintiff's application was denied on August 11, 2009 (Tr. 101-106).  Plaintiff then requested a hearing, which was held on February 11, 2011 before Administrative Law Judge ("ALJ") Timothy M. McGuan (Tr. 79-98).  Plaintiff testified at the hearing and was represented by counsel.

By decision dated March 3, 2011, the ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act (Tr. 63-74).  The ALJ's decision became the Commissioner's final determination when the Appeals Council denied plaintiff's request for review (Tr. 1-4).

Plaintiff then filed this action on January 2, 2013, pursuant to the judicial review provision of 42 U.S.C. § 405(g). On July 30, 2013, plaintiff filed a motion for judgment on the pleadings on the ground that the ALJ erred in not finding her disabled (Item 6). The Commissioner cross-moved for the same relief, arguing that the ALJ's determination must be upheld because it is supported by substantial evidence in the record (*see* Item 11).  The Commissioner filed a response to the plaintiff's motion on December 2, 2013 (Item 16).

---

[2]  References preceded by "Tr." are to page numbers of the administrative record, filed by defendant as part of the answer to the complaint (Item 5).

## DISCUSSION

### I.  Scope of Judicial Review

The Social Security Act states that upon district court review of the Commissioner's decision, "the findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401.  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D. Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986).  The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

3

**II.  Standard for Determining Eligibility for Disability Benefits**

To be eligible for DIB and/or SSI under the Social Security Act, plaintiff must show that he or she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. Pt. 404, Subpart P, App. 1 (the "Listings").  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  Finally, if the claimant is not capable of performing his or her past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's

age, education, past work experience, and residual functional capacity.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002); 20 C.F.R. §§ 404.1520(g), 416.920(g).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  The Commissioner ordinarily meets her burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpart P, App. 2 (the "Grids").[3]  However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ found that plaintiff worked in some capacity after February 28, 2009, the date alleged as the onset of her disability, but that the work did not rise to the level of substantial gainful activity (Tr. 65).  Upon review of plaintiff's medical records and hearing testimony, the ALJ found that plaintiff has a severe impairment, chronic obstructive pulmonary disease ("COPD"), and non-severe impairments including back and leg injuries, but that these impairments were not of sufficient severity to meet or equal any of the impairments in the Listings (Tr. 67).  The ALJ then determined that plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations, including the ability

---

[3]The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education and work experience in determining whether the claimant can engage in substantial gainful work existing in the nation economy.  *See Rosa*, 168 F.3d at 78; *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

to alternate between sitting and standing as needed and avoid exposure to extreme heat and cold, humidity, fumes, odors, dust, gases, and poor ventilation (Tr. 67).  The ALJ found that plaintiff is unable to perform her past relevant work as a nurse's aide and a personal care aide (Tr. 72).  Considering plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs in significant numbers in the national economy that plaintiff could perform (Tr. 73).  Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act at any time from February 28, 2009 through the date of the decision (Tr. 74).

## III.  The Medical Record

Plaintiff's medical records indicate that plaintiff was hospitalized from April 15 to April 17, 2007 for treatment of a fractured right leg (Tr. 257-63, 379-88). She underwent surgery on April 16, 2007 and x-rays taken on April 27, 2007 showed good alignment of the fracture (Tr. 269).  On August 10, 2007, plaintiff was walking without crutches with a mild antalgic gait (Tr. 267).   On September 21, 2007, plaintiff was walking with no significant antalgic gait, there was no swelling, and she had good range of motion.  Her surgeon recommended that she return to work with no restrictions on October 1, 2007 (Tr. 268).

Plaintiff treated with Dr. Omar Khokhar from approximately 2008.  A chest x-ray on April 30, 2009 was consistent with COPD (Tr. 414).  In August and September 2009, plaintiff was treated for COPD and back pain (Tr. 322-23, 325).  In a disability form completed for plaintiff's private insurer on September 10, 2009, Dr. Khokhar opined that

plaintiff was totally disabled (Tr. 328).  He stated that plaintiff was unable to sit, stand, or walk for any period of time, and was unable to climb, twist, bend, or stoop, reach above shoulder level, or operate machinery (Tr. 329).  In a Pulmonary Residual Functional Capacity Questionnaire dated October 6, 2009, Dr. Khokhar diagnosed COPD and stated that plaintiff was incapable of tolerating even a "low stress" job (Tr. 311).  He opined that plaintiff could sit, stand, or walk for about two hours in an eight-hour workday (Tr. 312).  In a Lumbar Spine Residual Functional Capacity Questionnaire, Dr. Khokhar stated that plaintiff could sit about four hours and stand or walk about two hours in an eight-hour work day (Tr. 317).  She could not lift more than ten pounds and should never twist, stoop or crouch (Tr. 318).

Plaintiff underwent a consultative internal medicine examination by Dr. Cindrea Bender on July 27, 2009 (Tr. 291-95).  Dr. Bender diagnosed COPD, with back pain and leg pain based on previous injuries (Tr. 294).  Plaintiff was found to have moderate limitations with walking and climbing for prolonged periods and should avoid extreme temperature conditions, chemicals, pollen, dust, mold, and other triggers of shortness of breath. *Id.*

On September 28, 2010, plaintiff went to the emergency room of United Memorial Medical Center complaining of back pain after "lifting and twisting" (Tr. 375)..  She was diagnosed with a thoracic strain and anxiety (Tr. 367).  A chest x-ray revealed no abnormalities of the pulmonary parenchyma (Tr. 368).

In a report to the New York State Office of Temporary and Disability Assistance dated August 13, 2010, Dr. Khokhar stated that plaintiff was totally disabled as a result of COPD, back ache, and right leg pain (Tr. 360-61).

Pulmonary function tests in January 2011 indicated mild airflow limitation without significant improvement after bronchodilator, significant reduction in diffusing capacity, and no indication of upper airway obstruction (Tr. 405).

## IV.  Hearing Testimony

At the administrative hearing, plaintiff testified that she cannot work because it is difficult to sit for more than a half-hour at a time and she is unable to walk more than 100 feet without rest (Tr. 84).  She uses three different inhalers to control her respiratory symptoms (Tr. 84) and takes muscle relaxants and pain killers to treat her back and leg pain (Tr. 89).  Plaintiff testified that she quit smoking "a few months ago" (Tr. 85).  Her COPD makes it difficult to vacuum, do laundry and household chores (Tr. 90-91).  She cooks her own meals and her daughter visits on a daily basis to help her (Tr. 91).  On a typical day, plaintiff sits at home and lies in bed. *Id.*

The Vocational Expert ("VE") testified that a person of plaintiff's age and education, who could do the full range of light work but with certain limitations, such as the ability to sit and stand at will and avoid extreme temperatures, fumes, dust, odors, humidity and wetness, could work as a cashier or ticket seller (Tr. 95-96).

## V.  The Treating Physician Rule

In support of her motion, plaintiff argues that the ALJ failed to properly assess the opinion of her treating physician, Dr. Khokhar.  The "treating physician rule" requires an ALJ "to grant controlling weight to the opinion of the claimant's treating physician if the

8

opinion is well supported by medical findings and is not inconsistent with other substantial evidence." *Rosado v. Barnhart*, 290 F.Supp.2d 431, 438 (S.D.N.Y. 2003) (citing 20 C .F.R. §§ 404.1527(d)(2), 416.927(d)(2)). As the Second Circuit has explained, a treating physician's opinion is typically accorded special consideration because of the "continuity of treatment he provides and the doctor/patient relationship he develops" with the claimant, which "place[s] him in a unique position to make a complete and accurate diagnosis of his patient." *Monegur v. Heckler*, 722 F.2d 1033, 1039 n. 2 (2d Cir. 1983).

Nonetheless, the Commissioner need not grant "controlling weight" to a treating physician's opinion as to the ultimate issue of disability, as this decision lies exclusively with the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *Snell v. Apfel ,*177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative."). Likewise, the Second Circuit has acknowledged that "[i]t is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence and the report of a consultative physician may constitute such evidence." *Monegur*, 722 F.2d at 1039 (internal citations omitted).

The ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors. *See de Roman v. Barnhart*, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing C.F.R. § 404.1527(d)(2)); *see also Shaw*

*v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

In this case, the ALJ extensively discussed the medical evidence and acknowledged the opinion of Dr. Khokhar, plaintiff's primary care physician. Dr. Khokhar stated, in several questionnaires to both plaintiff's private insurer and to the New York State Office of Temporary and Disability Assistance, that plaintiff was totally disabled and could do no more than sedentary work for a maximum of two hours in an eight-hour workday. The ALJ found this conclusion to be against the weight of the objective medical evidence. While Dr. Khokhar noted plaintiff's complaints of back pain, there is no medical documentation of a back injury, diagnostic studies or clinical findings showing back limitations, or treatment for a back injury other than pain medication. Similarly, the objective medical evidence indicates that plaintiff's leg fracture was completely healed and causes no functional limitations. Dr. Khokhar treated plaintiff's COPD with the use of inhalers, and pulmonary function tests indicate only a mild to moderate limitation in pulmonary function. In the consultative examination, Dr. Bender noted full range of motion in the cervical spine and flexion of 45 degrees in the lumbar spine (Tr. 293). X-rays of the lumbar spine revealed only a transitional L-5 vertebral body and were otherwise unremarkable (Tr. 296). Plaintiff had full range of motion in all extremities (Tr. 293-94). Dr. Bender ordered a pulmonary function test which revealed a moderate obstruction (Tr. 297).

Accordingly, despite the long-standing treating relationship, the ALJ properly found that Dr. Khokhar's opinions as to plaintiff's complete disability were not supported by the

objective medical evidence and were inconsistent with the conclusions of Dr. Bender.[4]  The ALJ adequately explained his reasoning under the treating physician rule and his conclusion, that plaintiff retained the RFC for light work with specific limitations, is supported by substantial evidence.

## VI.  The ALJ's Credibility Assessment

Plaintiff further argues that the ALJ failed to properly assess her credibility.   Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims and must be thoroughly considered.  If a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony.  *See Brandon v. Bowen*, 666 F.Supp. 604, 609 (S.D.N.Y. 1987). However, subjective symptomatology by itself cannot be the basis for a finding of disability. *Brown v. Colvin,* 2013 WL 3384172, *8 (N.D.N.Y. July 8, 2013).  A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged.  *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; *Gernavage v. Shalala*, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

---

[4]  In giving little weight to the various functional capacity evaluations and questionnaires completed by Dr. Khokhar, the ALJ stated that "[t]he possibility always exists that a doctor may express an opinion in an effort to assist the patient with whom he or she sympathizes . . . [or] to satisfy their patient's requests and avoid unnecessary doctor patient tension" (Tr. 71-72).  An ALJ should not engage in such speculation in the absence of supporting evidence.  *See McDowell v. Colvin,* 2013 WL 1337152, *10 (N.D.N.Y. March 11, 2013)  In this case, despite the offending language, a finding of improper sympathy by Dr. Khokhar was not explicitly made, the opinions of Dr. Khokhar were properly evaluated, and any error was, at best, harmless.

Having found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the ALJ nonetheless found that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible (Tr. 70). Specifically, the ALJ found that plaintiff's previous reports of her activities of daily living were inconsistent with her testimony at the hearing. In a form apparently submitted to the New York State Office of Temporary and Disability Assistance dated July 5, 2009, plaintiff stated that she cared for her grandchildren every other weekend, cared for herself and her cat, drove, shopped, prepared meals, did laundry, vacuumed, read, watched television, and visited with family (Tr. 209-13). Additionally, plaintiff's treatment history, or lack thereof, is inconsistent with her claims of total disability. She treated her back and leg pain with medication and her COPD with inhalers. The medical record indicates only minimal and conservative treatment approaches and no history of disabling symptomatology. Upon a review of the record, the court finds that the ALJ correctly applied the proper legal standards in assessing plaintiff's credibility and adequately specified the reasons for discrediting plaintiff's statements.[5] The credibility determination is supported by substantial evidence.

## VII.  The ALJ's Assessment of the Vocational Testimony

Plaintiff argues that, as the RFC was not supported by substantial evidence, the hypothetical based on this RFC and posed to the VE was not complete and accurate. Consequently, she contends that the ALJ erred in relying on the VE's testimony based on

[5] The ALJ did not, as plaintiff suggests, merely evaluate the consistency of plaintiff's statements against his own RFC determination.

12

this hypothetical.  As the court finds that the ALJ's assessment of plaintiff's RFC was supported by substantial evidence, the hypothetical was accurate and the ALJ did not err in relying on the VE's testimony based on that hypothetical.

## CONCLUSION

The Commissioner's determination that plaintiff is not disabled is supported by substantial evidence in the record.  The Commissioner's motion for judgment on the pleadings (Item 11) is granted and the plaintiff's motion (Item 6) is denied.  The Clerk of the Court is directed to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   April   23, 2014